Today is number 18-1350, Cooper v. Army, and we need counsel. Okay, Ms. Glickson. Good morning, everyone. Good morning, and may it please the Court. Your Honors, I'm well aware that it is a somewhat unusual thing for an agency decision to be set aside, but respectfully, this, I believe, is one of those cases, because it represents the kind of circular or tautological reasoning that should be avoided and that the Court should not allow. So, there is a nexus analysis that's required in these types of cases, and that wasn't done here. The standard is not simply, oh, there are criminal charges pending against this federal employee, and that's the end of the story. That isn't the end of the story. The agency has to prove a nexus between the efficiency of the service and the alleged crime. That didn't happen here. There is no connection articulated between the alleged offenses and Mr. Cooper's job, other than simply stating in a conclusory manner that he occupies a position of trust. Arguably, every federal employee occupies a position of trust. Other cases- How far does the agency have to go in explaining nexus when an employee's been charged with firearms charges? I mean, the nexus seems pretty much apparent, given the difficulties with firearms issues and employee workplace violence. Well, when the conduct happens off-duty and no one's hurt, it's not considered an egregious on its face. Other cases do a better job of actually making the connections and connecting the dots. Well, that may well be true, that the agency deciding official can write a better decision, but we're not here to do a check on whether they've written the best decision, but whether it's just sufficient. And the board found that there was substantial evidence to show that both he was reasonably suspected of committing a crime and that there was a nexus to his service. But the board does it in a very tautological way. First of all, the board admitted that it was actually concerned that the deciding official had expressed that he did not take into account the nature of the conduct as being off-duty at all. The administrative judge expressed concern with that. And then- Sure, but that's why we have an independent MSPB that can do a de novo review of the basis for the charges and determine as an independent fact finder whether they're supported or not. Well, respectfully, it's done insufficiently. It's simply a listing of Mr. Cooper's position description and then saying, again, in a tautological fashion, the deciding official's loss of trust justified by the criminal charges justifies a finding of nexus. That's just saying that loss of trust because of the existence of criminal charges is enough. And I don't think it is. Why isn't that enough? Because every federal- I mean, if you were a federal manager and you know one of your employees had been indicted on weapons charges, wouldn't you want them out of the office because you don't trust them? Well, respectfully, Your Honor, if I'm walking on the street outside my house and somebody attacks me or I perceive that, and I reach into my handbag and pull out a gun and hold the attackers at bay until the police come, and then I get a notice of proposed suspension from my job saying- Sure, but in your hypothetical, you're leaving out the fact that the state of Maryland indicted him on numerous weapons charges. No, I'm incorporating that into my example. If I hold somebody, an attacker, at bay until the police arrive, and then the police come and they get it wrong and they arrest me because I'm the one holding the gun, which is what happened in this case, the indictment happens. I don't get to testify to the grand jury and say, this was self-defense. I'm going to be indicted. That's what happened with my client only at the criminal trial does he have the opportunity to say, this was self-defense and make that argument. So in my example, I hold the attackers at bay. The police come and arrest me because I have the gun. I get a notice from my job saying, you're going to be suspended because there are these charges. Respond to us. I go and I say, this was self-defense. Your client got the right to respond, right? He got to say that he was self-defense. And the agency looked at that and said, we still don't have sufficient trust to allow him to continue to perform his duties while he's under indictment. Well, the agency, what the agency said was they never considered the fact that it was off-duty. And in the suspension notice- Well, that's pretty apparent, right? They had the video. I'm sorry? They had the video, right? They had the video. So it's at his home. Again, but if it happens in my analogy, if I go in and say, this was self-defense. Here's a video showing part of the incident that shows that it was self-defense. And all I did was hold these people at bay until the police came. And then I get a suspension notice like the one my client got that says, I reviewed everything and because of the charges, you're still suspended and it will promote the efficiency of the service. It's like, what happened to what I showed you? What about my self-defense- They didn't believe you. This is the agency's job. I mean, if there was some evidence that they didn't have or they overlooked or it was clear that they completely just ignored, you might have a case. But there's no dispute. They had your client's response, right? They had the video. They had all the evidence about the indictment and the like. And they went ahead and decided based upon all the factors that they were going to suspend him for the duration of the criminal trial. But where was the articulation of why and what it has to do with my job? It's not a case like in that Dunnington case where there's a border patrol agent who is charged with sexual- I mean, if this is your case, I don't see how far you're going to get in saying that the agency has to do more than say, we don't trust you to come into work because you've been indicted on serious firearms charges. But then respectfully, why isn't the existence of a criminal charge enough? Why doesn't it end there? Every time there's a criminal charge for anything, arguably it can- Well, I think it depends on the nature of the criminal charge. But again, this is not something that is potentially nonviolent or the like. This is firearms charges and assault charges, I believe, or something of the like. Whatever. I don't want to mischaracterize it. No. That's correct. But you know what I mean. This is not something that is completely unrelated to character and the ability to operate in the workplace. I think it's concerning, respectfully, Your Honor, because as you can see in the depositions of the- Does the record show anything about whether as a part of his federal employment he was authorized or required to carry a weapon? No. He was employed in a civilian capacity in this particular job. He was retired military, but this job was a civilian job. But there's no- And it didn't require the carrying of a weapon. No. But there's never been any dispute that he had all the required permits and licenses and trainings to carry the weapon. So- One pistol he didn't have a permit, but it was grandfather. Is that right? The German one that he brought from- Yes. I believe that's the case. Yes. Can I ask you a clarifying question? You've referred, as does Appendix 669, to a criminal indictment. Was there actually a grand jury, or was this a- So there was a grand jury indictment, but the agency wasn't aware. I mean, the order of events was this. There was a notice of proposed suspension issued for the indictment. Then there was an indictment. Then the agency issued the final notice, the final decision. But there was never any appreciation of the indictment. The signing officials never took into account the fact that there was an indictment. They never uttered the word indictment. It is true that there was a criminal- But they were aware that there had been a probable cause determination when he was charged with these offenses, right? But it's very problematic, and I know that the Henderson case exists. I think it's a problem because an accused doesn't testify before the grand jury. The grand jury is going to indict, but it doesn't protect my client at all or me in the hypothetical scenario when I'm arguing that the police have gotten it wrong. In this case, the administrative judge recognized that there were very serious discrepancies between what the crime report said occurred and what the video showed occurred. The judge said that. But there was in this case some kind of judicial look or independent look at evidence, not just do we have the man who is- are you Mr. Gruber? I don't really think there's much of a difference from being arrested. I thought our case law is pretty clear that arrest is not enough. Dunnington says indictment is, even though, as you say, indictments quite commonly occur without the defense getting to supply information. I've actually not been fully aware that there was an indictment here, but I was going to ask you- Neither was the agency until after the fact. But there was some kind of, I think what Judge Dyke referred to as a probable cause determination during the- what was he- he was being held for two weeks, close to two weeks, before he was released? Yes. Right. And the charges here were a couple of reckless endangerments, assault, first degree and second degree assault, plus the disobedience to the police officers, which the deciding official said he more or less was discounting because that just didn't happen. And the video supports that view, and that's the charge on which the judge in the criminal trial granted judgment of acquittal, right? I think it was charge number eight? Yes, that's correct. But all of these charges, as I think Judge Hughes was saying, involved on their face a potential for harm to life. Why isn't that enough for the agency to proceed and say not only is there reasonable cause for criminal conduct that carries a possibility of imprisonment, but also that indefinite suspension, while that is being decided, advances the efficiency of the service. And leaving to the criminal process the questions about intent and the surrounding circumstances, which, as Dunnington explains, it's not a great idea for the agency to be required to get too far into. Of course, that would not be a good idea to do a full-blown investigation. But what I would like to see, and what I wish occurred in this case and in every case, is an actual analysis. In other words, an awareness of what the standards are, going through and saying, okay, well, this was off-duty misconduct, but for these reasons I didn't believe you at some part of what you said. That didn't happen here. There was no analysis, and probably because the agency didn't know that they had to do one. They didn't know that they had to say, okay, this conduct was off-duty, so here are the four ways that off-duty misconduct can lead to an indefinite suspension. None of that happened, and I think it's very concerning. The proposing official, it was her first instance with discipline. The deciding official, I think he said it was maybe his only instance of discipline, and he also admitted, as the judge pointed out, that he didn't know about this off-duty thing. There's this reference over and over again in this case and with the deciding official's testimony to the crime provision. There's a misconception, I think, that the crime provision allows just when there's an arrest and charges that that's the end of the story without a nexus. But there's usually a nexus done and a nexus analysis done, and it's usually better than the one that the administrative judge included where he just listed the position description, which I thought was rather unremarkable. It's usually something more tailored, something like, like I said in that Dunnington case where there's like a border patrol agent who's charged with sexual misconduct of a child, and they actually go and they say, okay, well, this border patrol agent necessarily has to be alone with women and children for that reason. There's a link, but to just generalize and say, well, this is a position of trust, as are all federal jobs. I don't think it gets us there. I don't think it's enough. Do you want to save the rest of your time for the follow-up? Yes, thank you. Mr. Yale. May it please the Court. We'd first like to address the issue of the reasonable cause. So a lot of petitioners' brief relies upon an assertion that it was based solely on the arrest. I mean, that's plainly not accurate. There was, on October 26th, probable- Right, but almost the entire argument this morning was focused on something else, namely the thinness of the explanation at the time, at least, of why suspension advanced the efficiency of the service and was otherwise a reasonable penalty. Can you address that? Because Mr. – who is the deciding official? I forget his name. Mr. Davis. Mr. Davis, right. Seemed to acknowledge in his testimony that he wasn't even aware that he had a choice about what to do once he concluded that the threshold of reasonable cause for an imprisonable crime was committed. Well, as the administrative judge pointed out, I mean, there's certainly no – the word nexus is not used, but the final decision does use efficiency of the service. Right, but it's a sentence without an explanation at that point. And then it goes to the Douglas factors, which are, in fact, related, of course. Well, and the Douglas factor analysis, which was asked about at the deposition, I mean, that was incorporated – when he was asked at the deposition what he was relying upon, in part he said the Douglas factors. If you look at the Douglas factors checklist, it mentions the fact that in his position, it's a position of trust. And so, you know, I think there's – it's not simply the fact that there needs to be a statement nexus and then an additional analysis. Could there have been more said in the final notice? I think sure, but that's not what is being reviewed here. I mean, it's a substantial evidence standard. And what we have here is a situation where there are serious criminal charges. You know, we have the state of Maryland bringing an independent judicial officer finding probable cause on 11 out of 12 criminal charges. And the fact even that this went in front of the circuit court, I mean, who deals with felonies. So I think all of this, as the administrative judge recognized, certainly lends evidence to the fact that there was – the agency felt a loss of trust at that point in time. Why is it that he wasn't subjected to removal proceedings after the criminal acquittal? After the criminal acquittal? Well, I think that could always have been a possibility. I don't personally have transparency into why or why not they didn't proceed forward. I'm just wondering what the agency policy is here. Is it sort of to just automatically follow what happens with the disposition of the criminal charge? Or is there an effort to look at it with an independent investigation? Well, I think that there have been cases, and I'm not particularly pointing to Army cases, but there have been cases, given the differentiation between the burdens of proof in a criminal case versus what we're talking about here, where somebody could have been found not guilty and the agency can still go forward with the removal proceedings. But something might also be irresponsible, even if it's not criminal. Correct. And, for example, maybe there could be something that implicates security clearance or a bunch of other things that could come out of a criminal trial that the agency could then look at. As to here, the decision— What's the agency policy about that? I'm not aware of a specific policy or regulation that would affect that particular decision, but that's not—I mean, as you're aware, that's not the decision actually at issue here. I mean, he was found not guilty on most of these charges. There was one that was declined to be prosecuted at that point. The decision was made to pretty quickly bring him back into his employment. There's been no assertion that that wasn't made promptly. But as to the decision here, as to the indefinite suspension, I think in many— I think the system really worked here when you look at it. I mean, the agency had serious concerns about these criminal charges. They did not—they gave the notice. They provided two written responses. They provided an oral meeting in person. And even though the initial notice said that only seven days' notice could be provided, because he was incarcerated that period of time, he was—in reality, he was given approximately 36 days of notice before this final decision was made. So I think just based upon all of the evidence and the record— But they're not arguing the 30-day notice provision, are they? Nobody is arguing the 30-day notice provision, but in the briefs, part of the argument has been some sort of rush to judgment that all the agency is doing is looking at the mere fact of an arrest. And we think that when you look at all of the evidence and the fact that the agency has met with the individual in person, reviewed two written statements, I think that certainly counters the point that there's been any sort of rush to judgment in this particular case. We might add, in addition to the probable cause determination, there was actually, in this case, a grand jury indictment on 11-19. I mean, we have—we've pointed to that in our brief. So again, we have both an independent judicial officer providing probable cause determinations on 11 of the 12 charges, but then even before the final decision, a grand jury indictment. Now, I think it's probably correct that the record's not clear whether or not the agency was aware, particularly of this superseding criminal indictment in the circuit court. But again, it certainly counters the notion that there's been any sort of rush to judgment or that there was no probable cause at the time. I don't know how we can take the indictment into account unless the agency was aware of it. But we do have the probable cause finding by the courts in bringing the charges. Well, the reason why we're mentioning the indictment, you can imagine a situation where there has been a notice, there's been probable cause findings, and it goes to, for example, in this case, if it had gone to a grand jury and there was actually a no bill. I mean, that didn't happen in this case. The case proceeded further than what we have here. So I'm just pointing it out to the fact that it's not as if in between when the notice happened and the final decision was made, the state of Maryland somehow decided that there actually was no probable cause at that point in time. And if there's no further questions, we ask that you affirm the judgment of the MSPB. Okay, Ms. Glickson. May it please the Court, just briefly, Your Honors. The grand jury never sees the video and never hears that there's a complete defense. Why are we talking about the grand jury? Well, I was just responding to what my friend was offering. The record doesn't show the agency was aware that there was a grand jury indictment. Right. Yes. And I'll just end with the idea that we don't want these notices, notices of proposed suspensions or final decision notices, to be like boilerplate notices that just use certain buzzwords. Like they just say, promote the efficiency of the service, or they say the words Douglas factors. We don't want to have that type of situation because we're not looking at each situation case by case, and it denies federal employees the minimum due process that they're entitled to. But if you look at these notices, there's some cutting and pasting from the crime report, but there's nothing tailored to the individual situation at play here. There needs to be something more than just, well, they use the words failure to promote the efficiency of the service, or the words Douglas factors were said. We shouldn't be having on computers just boilerplate documents and we just change the name of the employee. There needs to be an individualized analysis, and that's the main argument that we have. Okay. Thank you. Thank both counsel. The case is submitted. That concludes our session for this morning. All rise.